UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDRE D. SCOTT,

    Petitioner,

v.

R.T.C. GROUNDS,

    Respondent.

Case No. 13-cv-04714-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Andre Scott seeks federal habeas relief from his state convictions because the trial court (1) failed to properly answer the jury's question and (2) used an invalid juvenile adjudication to enhance his sentence. While the trial judge should have answered the jury's question directly, as the California Court of Appeal noted, the error was harmless. And though the trial judge erroneously enhanced Scott's sentence by using an invalid juvenile adjudication, Scott's claim is moot because the California Court of Appeal modified Scott's judgment to strike the enhancements. For the reasons set forth below, the petition for habeas relief is DENIED.

## BACKGROUND

In April, 2007, Scott and Larry Douglas, who were both pimps, shot at two persons as punishment for their failure to pay the prostitutes Scott and Douglas sent to them.

1   Roommates Muhamad Sagier and Jason Wilson asked two women at separate times to
2   come to their apartment for sexual services. Each woman left without providing any such
3   services. They were not paid. Scott and Douglas later came to the apartment armed. They
4   chased after Sagier, who attempted to barricade himself in his bedroom, and kicked down
5   the door:

> Sagier, who was standing on his bed, ducking, with his arm over his face, was struck in his upper thigh, which, given his position, was close to his vital organs. Defendants did not flee after wounding Sagier but continued to Wilson's bedroom. Wilson was holding the doorknob when defendants tried to open the door, so they must have known that he was behind the door when one of them tried to turn the knob. Knowing this, they fired shots through the door, a foot above the doorknob, where one would expect to find the vital organs of someone who was holding the doorknob. Indeed, Wilson was struck by one bullet in the shoulder and by another in the face.

(*Id.* at 18.) The police recovered three .22 caliber shell casings and five .40 caliber shell casings from the apartment. (*Id.* at 3-5.)

In 2010, a Santa Clara County Superior Court jury convicted Scott of two counts of attempted murder and found true an allegation that he acted willfully, deliberately, and with premeditation in the commission of the attempted murders. (Ans., Ex. 4 at 1.) Scott admitted at trial to a prior juvenile adjudication, which the trial court counted as a strike conviction to enhance Scott's sentence by ten years under California's Three Strikes law (Cal. Penal Code section 667(a)). (Ans., Ex. 4 at 1-2 (State Appellate Opinion, *People v. Scott, et al.*, No. H035845, 2012 WL 2343268 (Cal. Ct. App. Jun. 20, 2012) (unpublished).) He received a sentence of 40 years-to-life in state prison.

On appeal, the California Court of Appeal reduced Scott's sentence to 30 years-to-life. Other than achieving this sentence reduction, Scott's attempts to overturn his convictions and sentences through the state courts were unsuccessful. This federal habeas petition followed.

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively reasonable. *See Delgado v.*

*Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review is not a *de novo* review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## DISCUSSION

### I.  Trial Court's Response to a Jury Question

Scott claims that the trial court's response to the jury question about the attempted murder counts violated his Sixth and Fourteenth Amendment rights. (Pet. at 1.) The state appellate court summarized the facts as follows:

> [During deliberations, the jury sent out a note that] concerned the attempted murder counts. It read: "We, as a jury, have found a 'careless disregard for lethal consequence' in regards to counts 1, 2, 5, and 6. We would like to further clarify the phrase 'intent to kill.' Does a 'careless disregard for lethal consequences' constitute an 'intent to kill?'" [FN11.] The court responded in writing . . . to this note: "Please refer to Instruction Numbers 251 ["Union of Act and Intent: Specific Intent or Mental State"] and 600 ["Attempted Murder"]. The jury deliberated for half an hour more before retiring for the evening.
>
> [FN11.] Although the parties see nothing in the arguments to suggest how the jury came up with this language, there is reason to believe that it might have been derived from the prosecutor's argument that defendants had demonstrated they intended to kill by failing to call 911, which showed they "didn't care" whether Sagier and Wilson died.
>
> The next day, Douglas's trial counsel put on the record the fact that he had objected to the court's response to the note concerning the attempted murder counts. "[M]y suggested response was that [the answer to] the rather specific question was to say, no, the careless disregard, and use the same language they have in the question, does not constitute an intent to kill, because legally it would not, and I don't believe the response directing them back to the CalCrim is sufficient because they already have those instructions, and despite those instructions, they still pose this question." Douglas's trial counsel moved for a mistrial on the ground that the jury's

4

note reflected that it was "disregard[ing]" the court's instructions. Scott's trial counsel joined in the mistrial motion and suggested that the jury's use of the words "careless disregard for legal [*sic*] consequences" reflected that it was engaging in misconduct by "consult[ing] other sources" and failing to follow the court's instructions. The court denied the mistrial motion without comment. Later that day, the jury returned guilty verdicts on all counts, including the attempted murder counts, and found the premeditation allegations true.

(*Id.* at 10-15.)

The state appellate court rejected Scott's claim because, while the trial court's response was in error, there was no prejudice:

> Here, when the jury asked: "Does a 'careless disregard for lethal consequences' constitute an 'intent to kill?'", it was essentially asking if a "careless disregard" for life was sufficient to satisfy attempted murder's "intent to kill" element. This was a question of law that the trial court was obligated to affirmatively resolve. As defendants point out, the correct answer was "No." Because, notwithstanding the fact that the jury had already received accurate instructions on the "intent to kill" element, the jury had still come to believe that "careless disregard" might satisfy the "intent to kill" element of attempted murder, the trial court had an obligation to debunk the jury's misapprehension of the jury instructions. Referring the jury back to instructions that it had clearly misunderstood was inadequate. We therefore conclude that the trial court erred in failing to respond "no" to the jury's inquiry.
>
> The next question is whether the trial court's error was prejudicial. Defendants contend that the trial court's error was a violation of the Sixth Amendment because it amounted to an erroneous instruction on an element of the offense. We disagree with this characterization of the trial court's error. Although the court failed to properly respond "no" to the jury's inquiry, it did not give any inaccurate instructions on the elements of the offense. Indeed, the trial court's response to the jury's inquiry was to refer the jury back to accurate instructions on every element of the offense. Hence, the trial court's error was not a violation of the Sixth Amendment.
>
> It follows that reversal is required only if it is reasonably probable that defendants would have attained a more favorable verdict if the court had properly responded "no" to the jury's inquiry. [Footnote omitted.] The record does not support defendants' claim that a more favorable result was reasonably probable in the absence of the court's error.

5

> The jury was properly instructed with CALCRIM No. 600, and the trial court referred the jury back to this correct instruction in response to its inquiry. Although CALCRIM No. 600 does not elaborate on the meaning of "intended to kill," it does not in any way suggest that "careless disregard" is the equivalent of "intended to kill." The evidence that defendants intended to kill was also very strong. Defendants kicked open the door to Sagier's room, pointed guns at a defenseless Sagier, and fired at least five shots, at least two of which were hollow point .40 caliber bullets, a particularly lethal bullet. Sagier, who was standing on his bed, ducking, with his arm over his face, was struck in his upper thigh, which, given his position, was close to his vital organs. Defendants did not flee after wounding Sagier but continued to Wilson's bedroom. Wilson was holding the doorknob when defendants tried to open the door, so they must have known that he was behind the door when one of them tried to turn the knob. Knowing this, they fired shots through the door, a foot above the doorknob, where one would expect to find the vital organs of someone who was holding the doorknob. Indeed, Wilson was struck by one bullet in the shoulder and by another in the face. The circumstances under which defendants fired the many shots they directed at Sagier and Wilson strongly supported a finding that defendants intended to kill both men.
>
> Nor does the record suggest that the jury actually rested its verdict on a "careless disregard" theory rather than a finding that defendants intended to kill. The jury not only found defendants guilty of attempted murder under CALCRIM No. 600 but also found true allegations that defendants had acted willfully, deliberately, and with premeditation in the commission of the attempted murders. It is practically inconceivable that the jury could have concluded that defendants willfully, deliberately, and with premeditation acted with "careless disregard." Deliberation and premeditation are the very antithesis of "careless disregard."
>
> As the evidence of intent to kill was very strong, and the jury's findings on the premeditation allegations were inconsistent with reliance on a "careless disregard" theory, the trial court's error in its response to the jury's inquiry was not prejudicial.

(*Id.* at 17-19.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas

6

1   court must evaluate the jury instructions in the context of the overall charge to the jury as a
2   component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982)
3   (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

4         A trial judge has wide discretion in charging the jury, a discretion which carries
5   over to the judge's response to a question from the jury. *Arizona v. Johnson*, 351 F.3d
6   988, 994 (9th Cir. 2003). Jurors are presumed to follow their instructions. *See Richardson
7   v. Marsh*, 481 U.S. 200, 206 (1987). It is "presumed that the jury fully understood the
8   judge's answer and appropriately applied the jury instructions, " if the jury does not ask a
9   follow up question after a trial court has directed the jury's attention to the constitutionally
10  adequate instruction that answers its question. *Waddington v. Sarausad*, 555 U.S. 179, 196
11  (2009).

12        Habeas relief is not warranted because the state appellate court reasonably rejected
13  the claim that the trial court's response rendered Scott's trial fundamentally unfair or
14  violated his Sixth Amendment rights. While the trial court should have said "no" to the
15  jury's question, the trial court gave the jury the correct instructions before deliberations
16  and guided the jurors back to those correct instructions in his response to their question.
17  This Court must presume that the jury understood the trial court's instruction and applied
18  the correct standard. *Marsh*, 481 U.S. at 206; *Sarausad*, 555 U.S. at 196.

19        As the state appellate court reasonably determined, there was no prejudice. The
20  trial court directed the jury to the original instructions, which accurately stated the law.
21  They were not misinformed or misled. The jury found true an allegation that Scott acted
22  willfully, deliberately, and with premeditation in the commission of the attempted murders,
23  the correct standard for attempted murder. And there was very strong evidence that Scott
24  intended to kill. He and Douglas came to Sagier and Wilson's apartment armed. They
25  shot at the unarmed Sagier at least five times, injuring him. Then they pursued Wilson and
26  shot him. The state appellate court's decision was reasonable and therefore is entitled to
27  AEDPA deference. This claim is DENIED.
28

## II. Use of Juvenile Conviction

At trial, Scott admitted that in 1997, when he was 16, he was found guilty at a juvenile proceeding of robbery. (Ans., Ex. 7, Vol. 18 at 3636-3638.)[1] Defense counsel objected to the use of this conviction as a strike under Cal. Penal Code 667(a) because Scott did not have the right to a jury at the juvenile proceeding. (*Id.* at 3643.) The trial court overruled the objection, found that the conviction was a serious felony within California's Three Strikes law, and imposed 10 years under the relevant statute, that is, Cal. Penal Code 667(a). (*Id.*, Vol. 19 at 3664-65.)

Scott claims that the trial court's use of his juvenile conviction to calculate his sentence violated his right to due process for the same reasons defense counsel raised in court. (Pet. at 1.) This claim is moot. The state appellate court concluded that a juvenile conviction does not qualify as a strike conviction under section 667(a), and in consequence Scott's sentence was adjusted downward by 10 years, the same number of years imposed because of the putative strike. (Ans., Ex. 4 at 28, 30.) Because Scott's sentence has been modified, there is no relief that this Court can give on his claim.[2]

---

[1] Rather than lodging the trial transcript in docket of this case, respondent directed the Court to use the exhibits filed in Douglas's habeas action (*Douglas v. Grounds*, No. C 13-4655 CRB). The citations to the trial transcript correspond the exhibits filed in Douglas's action.

[2] This claim would also fail on the merits. Scott's first contention, that the juvenile conviction violated due process and his Sixth Amendment right to a jury, is foreclosed by Supreme Court precedent. There is no federal constitutional right to a jury in a juvenile adjudication proceeding. *McKeiver v. Pennsylvania*, 403 U.S. 528, 545 (1971).

Scott's second contention is that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), barred the trial court from using the admitted conviction. Under *Apprendi*, any fact, other than the fact of a prior conviction, that increases the penalty of a crime beyond the statutory maximum must be submitted to the jury and found true beyond a reasonable doubt. *Id.* at 490. Scott asserts that his juvenile conviction does not qualify under the prior conviction exception to *Apprendi* (meaning that the allegation of a prior conviction should have been submitted to Scott's jury) because juvenile adjudications lack sufficient procedural safeguards, such as a jury trial and the requirement that guilt must be shown beyond a reasonable doubt. This contention fails for two reasons. First, Scott <u>admitted</u> to the conviction. Admission to the conviction waives his Sixth Amendment right to have the

8

## CONCLUSION

The state court's adjudication of Scott's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Scott may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** April 16, 2015

WILLIAM H. ORRICK
United States District Judge

---

allegation submitted to the jury, as the Supreme Court affirmed in *Blakely v. Washington*, 542 U.S. 296, 303 (2004), one of *Apprendi*'s progeny. Second, the Ninth Circuit has held that "in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of [petitioner's] juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent." *Boyd v. Newland*, 467 F.3d 1139, 1152 (9th Cir. 2006). For these reasons, Scott's due process claim lacks merit.

9